KAREN P. HEWITT
United States Attorney
NICOLE ACTON JONES
Assistant U.S. Attorney
California State Bar No. 231929
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5482
E-mail: nicole.jones@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Criminal Case No. 08CR1019-BTM |
| | ) |
| Plaintiff, | ) **GOVERNMENT'S RESPONSE AND** |
| | ) **OPPOSITION TO DEFENDANT'S MOTIONS:** |
| | ) |
| v. | ) **(1) COMPEL DISCOVERY/PRESERVE** |
| | )     **EVIDENCE;** |
| | ) **(2) TO RELEASE GRAND JURY TRANSCRIPTS;** |
| CESAR PONCE-SALAZAR, | ) **(3) TO COMPEL BILL OF PARTICULARS;** |
| | ) **(4) SUPPRESS STATEMENTS;** |
| | ) **(5) SUPPRESS EVIDENCE;** |
| Defendant. | ) **(6) TO DISMISS INDICTMENT; AND** |
| | ) **(7) FOR LEAVE TO FILE FURTHER MOTIONS** |
| | ) |
| | ) **TOGETHER WITH STATEMENT OF FACTS** |
| | ) **AND MEMORANDUM OF POINTS AND** |
| | ) **AUTHORITIES** |
| | ) |
| | ) Date:   May 23, 2008 |
| | ) Time:   1:30 p.m. |
| | ) Court:   The Hon. Barry T. Moskowitz |
| | ) |
| _____ | ) |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Nicole Acton Jones, Assistant United States Attorney, and hereby files its Response and Opposition to Defendant's above captioned Motions.   This Response and Opposition is based upon the files and records of the case together with the attached Statement of Facts and Memorandum of Points and Authorities.

1

**I**

2

**STATEMENT OF THE CASE**

3    Defendant Cesar Ponce-Salazar ("Defendant") initially accepted a Fast-Track disposition offer in

4   this case.  On March 11, 2008, Defendant waived indictment, stipulated to the release of the material

5   witnesses and entered a plea of not guilty to an information charging him with a single count of

6   Transportation of Illegal Aliens, in violation of Title 8, United States Code, Section 1324.  The initial

7   change of plea hearing was set for March 25, 2008 before Magistrate Judge Stormes, but on that date

8   Defendant requested and received a continuance to April 3, 2008.  Defendant subsequently changed his

9   mind and rejected the Government's Fast-Track disposition offer.

10    On April 2, 2008, a federal grand jury in the Southern District of California returned a six-count

11   Indictment charging Defendant with Bringing in Illegal Aliens for Financial Gain and Transportation

12   of Illegal Aliens, in violation of Title 8, United States Code, Section 1324.  On April 3, 2008, Defendant

13   was arraigned on the Indictment and entered a plea of not guilty.  On that same date, Judge Stormes

14   granted Defendant's request to stay the March 11, 2008 Order releasing the material witnesses, to the

15   extent the Order had not already been executed.  Border Patrol subsequently confirmed that, in

16   accordance with the March 11 Order, the material witnesses had been returned to Mexico on March 13,

17   2008.

18

**II**

19

**STATEMENT OF FACTS**[1/]

20    On February 22, 2008, the North County Smuggling Interdiction Group ("SIG") was assigned to

21   patrol the I-15 corridor, which is an area notorious for alien and drug smuggling.  Agent Mondragon was

22   working in uniform and driving a fully marked vehicle.  The remaining members of the team were in

23   plain clothes and unmarked vehicles.

24    At about 10:10 a.m., Agent Mondragon was observing northbound traffic on I-15 near the Old

25   Highway 395 exit when he saw a maroon Dodge Stratus pass his location.  Agent Mondragon observed

26   that the vehicle was driving at a high rate of speed, appeared heavily loaded, and had heavily tinted

27

28    [1/]    The following proffer is based upon the sworn probable cause statement attached to the complaint.  For the court's convenience, a copy of the statement is attached hereto as Exhibit A.

windows. Due to rain and heavy traffic, Agent Mondragon lost sight of the vehicle and relayed the vehicle's description to other agents.

Agent Martinez observed a vehicle matching Agent Mondragon's description near the Temecula Parkway exit. Martinez observed the driver and noticed that the passenger windows were fogged up, indicating the presence of several passengers. Agent Martinez maintained visual contact until Agent Mondragon was able to catch up. Agent Mondragon then ran records checks on the vehicle and discovered that the vehicle was registered to an address on Logan Avenue in San Diego, which is an area known for harboring and housing illegal aliens until the aliens can be transported to their final destinations. Agent Mondragon attempted to conduct a vehicle stop by activating his lights and sirens, but the driver failed to yield and accelerated away. Agent Mondragon terminated pursuit and exited the highway, Agent Martinez, however, maintained visual contact with the suspect vehicle, which was being driven erratically through traffic. The suspect vehicle eventually became stuck in traffic, at which point the driver, later identified as Defendant, attempted to flee the vehicle, but ended up getting his leg caught between the vehicle's doorframe and the center divide. A total of six other people were found in the vehicle, three of whom were in the trunk. Agents Velez and Martinez identified themselves to all of the vehicle's occupants and conducted an immigration interview. Each individual, including Defendant, admitted to being citizens of Mexico without legal authorization to be in the United States. All the individuals were arrested and transported to the Murietta Border Patrol Station for processing.

At the station, the material witnesses admitted their illegal status and stated that they had crossed into the United States from Mexico on foot, with the help of a guide. The witnesses stated that after walking for several hours, they were picked up on the side of the road by a vehicle. The witnesses further stated that they had made arrangements with an unknown smuggler and each were to pay a fee ranging from $1700 to $2500. The front-seat passenger, material witness Mariano Yanez-Perez, identified Defendant as the driver of the vehicle.

At about 4:52 p.m., Defendant elected to waive his Miranda rights and make a statement. Defendant admitted his illegal status, admitted that he knew all of the passengers were also illegally in the United States and admitted that he drove the vehicle. Defendant claimed that he was one of the smuggled aliens and that he had agreed to drive the group of aliens to Los Angeles in lieu of paying a

$2000 smuggling fee.  Defendant also admitted that he knowingly and intentionally failed to yield to Border Patrol and that he had admitted to flee the vehicle.

### III

### DEFENDANT'S MOTIONS

**A.    THE MOTION TO COMPEL DISCOVERY SHOULD BE DENIED**

The Government has and will continue to fully comply with its discovery obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. § 3500), and Rule 16 of the Federal Rules of Criminal Procedure.  The Government anticipates that most discovery issues can be resolved amicably and informally, and has addressed Defendant's specific requests below.

**(1)    The Defendant's Statements**

The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant the substance of Defendant's oral statements and Defendant's written statements.  The Government has produced all of Defendant's written statements that are known to the undersigned Assistant U.S. Attorney at this date and has also produced all available videotapes and/or audiotapes. If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to Defendant.

The Government has no objection to the preservation of the handwritten notes taken by any of the Government's agents and officers.  <u>See</u> <u>United States v. Harris</u>, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses).  However, the Government objects to providing Defendant with a copy of any rough notes at this time.  Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report.  <u>See</u> <u>United States v. Brown</u>, 303 F.3d 582, 590 (5th Cir. 2002); <u>United States v. Coe</u>, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report).  The Government is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness.  <u>United States v. Spencer</u>, 618 F.2d 605, 606-07 (9th Cir. 1980).  The rough notes in this case do not constitute "statements" in accordance with the Jencks Act.  <u>See</u> <u>United States v. Ramirez</u>,

954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms). The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment. Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

### (2)    Arrest Reports, Notes and Dispatch Tapes

The United States has provided the Defendant with arrest reports. As noted previously, agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery. As for dispatch tapes, the Government has requested copies of any available dispatch tapes and will produce such tapes if they exist. Finally, Defendant requests TECS records. The Government has not run TECS queries on Defendant and Defendant has made no showing as to how such queries would be relevant given that Defendant did not enter the United States through a designated port of entry.

### (3)    Brady Material

Again, the United States is aware of and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case. As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." Id. at 774-775 (citation omitted).

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

1    Although the United States will provide conviction records, if any, which could be used to impeach

2    a witness, the United States is under no obligation to turn over the criminal records of all witnesses.

3    United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976).  When disclosing such information,

4    disclosure need only extend to witnesses the United States intends to call in its case-in-chief.  United

5    States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th

6    Cir. 1979).

7    Finally, the United States will continue to comply with its obligations pursuant to United States

8    v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

9    Under the guise of a Brady request, Defendant requests "all reports and notes regarding

10   arrests/apprehensions from Logan Avenue and the I-15 corridor of San Diego County." [Def's Motion

11   at 4.] Defendant has failed to support this incredibly overbroad request with citation to law or facts.

12   Presumably, Defendant's request is based upon the fact that the agents involved in this case have

13   knowledge that Logan Avenue (the address Defendant's vehicle was registered to) and the I-15 corridor

14   (the area where Defendant was first spotted) are commonly used for alien smuggling.  The agents'

15   knowledge on these points is not Brady material.  If this Court were to find that an evidentiary hearing

16   is even required on Defendant's stop motion, Defendant will be free to question the Government's

17   witnesses as to the basis for their decision to stop Defendant's vehicle.  Until then, Defendant's request

18   is premature and unduly burdensome.

19       **(4)    Sentencing Information**

20   Defendant claims that the United States must disclose any information affecting Defendant's

21   sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83

22   (1963).  The United States respectfully contends that it has no such disclosure obligation under Brady.

23   The United States is not obligated under Brady to furnish a defendant with information which he

24   already knows.  United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986).  Brady is a rule of

25   disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the

26   defendant.  In such case, the United States has not suppressed the evidence and consequently has no

27   Brady obligation.  See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

28       But even assuming Defendant does not already possess the information about factors which might

affect his guideline range, the United States would not be required to provide information bearing on

1  Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior to

2  his sentencing date.  See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No [Brady]

3  violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in

4  value.").  Accordingly, Defendant's demand for this information is premature.

5  **(5)    Defendant's Prior Record.**

6  The United States has already provided Defendant with a copy of his criminal record in accordance

7  with Federal Rule of Criminal Procedure 16(a)(1)(B).

8  **(6)    Proposed 404(b) Evidence and 609 Evidence**

9  Should the United States seek to introduce any similar act evidence pursuant to Federal Rules of

10  Evidence 404(b) or 609, the United States will provide Defendant with notice of its proposed use of such

11  evidence and information about such other acts at or before the time the United States' trial

12  memorandum is filed.

13  **(7)    Evidence Seized**

14  The United States has complied and will continue to comply with Rule 16(a)(1)(c) in allowing

15  Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which

16  is within the possession, custody or control of the United States, and which is material to the preparation

17  of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were

18  obtained from or belong to Defendant, including photographs.

19  The United States, however, need not produce rebuttal evidence in advance of trial.  United States

20  v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

21  **(8)    Preservation of Evidence**

22  The United States will preserve all evidence to which Defendant is entitled pursuant to the relevant

23  discovery rules.  However, the United States objects to Defendant's blanket request to preserve all

24  physical evidence.

25  The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing

26  Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which

27  is within his possession, custody or control of the United States, and which is material to the preparation

28  of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were

1    obtained from or belong to Defendant, including photographs.  The United States has made the evidence

2    available to Defendant and Defendant's investigators and will comply with any request for inspection.

3         **(9)      Henthorn of Evidence**

4         Again, the United States will comply with its obligations pursuant to <u>United States v. Henthorn</u>,

5    931 F.2d 29 (9th Cir. 1991).

6         **(10)     Tangible Objects**

7         The Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing

8    Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects

9    seized that is within its possession, custody, or control, and that is either material to the preparation of

10   Defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at

11   trial, or was obtained from or belongs to Defendant.   The Government need not, however, produce

12   rebuttal evidence in advance of trial.  <u>United States v. Givens</u>, 767 F.2d 574, 584 (9th Cir. 1984).

13        The Government opposes Defendant's specific request to view his A-File and/or the A-Files of the

14   material witnesses as irrelevant.  This is particularly true as to the A-Files of the material witnesses

15   because those witnesses have all been released, pursuant to a stipulation signed by Defendant.   If

16   counsel is able to articulate why such a viewing is necessary to comply with discovery rules, the

17   Government requests that such a request be made in writing.

18        **(11)     Expert Witnesses**

19        The Government will comply with Rule 16(a)(1)(G) and provide Defendant with a written

20   summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705 of

21   the Federal Rules of Evidence during its case-in-chief at trial.  This summary shall include the expert

22   witnesses' qualifications, the expert witnesses opinions, the bases, and reasons for those opinions.

23        **(12)     Reports of Examinations and Tests**

24        The United States will comply with its obligations under Rule 16(a)(1)(F) with respect to

25   examinations or scientific tests.

26        **(13)     Evidence of Bias or Motive to Lie**

27        The United States is unaware of any evidence indicating that a prospective witness is biased or

28   prejudiced against Defendant.  The United States is also unaware of any evidence that prospective

1  witnesses have a motive to falsify or distort testimony.  If the United States were to become aware of

2  such information at a future date, the United States will make any required disclosures.

3  **(14)    Impeachment Evidence**

4  As stated previously, the United States will turn over evidence within its possession which could

5  be used to properly impeach a witness who has been called to testify.

6  **(15)    Criminal Investigation of Government Witness**

7  Defendants are not entitled to any evidence that a prospective witness is under criminal

8  investigation by federal, state, or local authorities.  "[T]he criminal records of such [Government]

9  witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976); United

10 States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records of prosecution

11 witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United States v. Rinn, 586

12 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that the Government has no

13 discovery obligation under Fed. R. Crim. P. 16(a)(1)(c) to supply a defendant with the criminal records

14 of the Government's intended witnesses.") (citing Taylor, 542 F.2d at 1026).

15 The Government will, however, provide the conviction record, if any, which could be used to

16 impeach witnesses the Government intends to call in its case-in-chief.  When disclosing such

17 information, disclosure need only extend to witnesses the United States intends to call in its case-in-

18 chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d

19 1305, 1309 (9th Cir. 1979).

20 **(16)    Evidence Affecting Perception, Recollection, Communication or Truth-Telling**

21 The Government recognizes its obligation under Brady and Giglio to provide material evidence

22 that could be used to impeach Government witnesses including material information related to

23 perception, recollection, ability to communicate, or truth telling.  The Government strenuously objects

24 to providing any evidence that a witness has ever used narcotics or other controlled substance, or has

25 ever been an alcoholic because such information is not discoverable under Rule 16, Brady, Giglio,

26 Henthorn, or any other Constitutional or statutory disclosure provision.

27 **(17)    Jencks Act Material**

28 The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified on direct

examination, the Government must give the Defendant any "statement" (as defined by the Jencks Act)

in the Government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks Act is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). While the Government is only required to produce all Jencks Act material after the witness testifies, the Government plans to provide most (if not all) Jencks Act material well in advance of trial to avoid any needless delays.

### (18)    Giglio Information

As stated previously, the United States will comply with its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and Giglio v. United States, 405 U.S. 150 (1972).

### (19)    Agreements Between the Government and Witnesses

The Government has not made or attempted to make any agreements with prospective Government witnesses for any type of compensation for their cooperation or testimony. As to Defendant's requests related to material witnesses, Defendant stipulated to the release of the material witnesses and stipulated to certain information that the witnesses would have testified about. Because the Government is not calling any of the aliens Defendant was arrested with as witnesses, there is no basis for Defendant's request for disclosure.

### (20)    Informants and Cooperating Witnesses

The Government must generally disclose the identity of informants where (1) the informant is a material witness, or (2) the informant's testimony is crucial to the defense. Roviaro v. United States, 353 U.S. 53, 59 (1957). If there is a confidential informant involved in this case, the Court may, in some circumstances, be required to conduct an in-chambers inspection to determine whether disclosure of the informant's identity is required under Roviaro. See United States v. Ramirez-Rangel, 103 F.3d 1501, 1508 (9th Cir. 1997). If the Government determines that there is a confidential informant who is a

material witness in this case, the Government will either disclose the identity of the informant or submit the informant's identity to the Court for an in-chambers inspection.

### (21)    Bias by Informants or Cooperating Witnesses

As stated above, the United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

### (22)    Residual Request

The Government has already complied with Defendant's request for prompt compliance with its discovery obligations. The Government will comply with all of its discovery obligations, but objects to the broad and unspecified nature of Defendant's residual discovery request.

## B.    THE MOTION TO RELEASE GRAND JURY TRANSCRIPTS SHOULD BE DENIED

Defendant next requests the disclosure of the grand jury transcripts in this case. This motion should be denied because (1) the Government does not intend to call anyone who testified before the grand jury for trial and (2) Defendant's citation to United States v. Lopez, 484 F.3d 1186 (9th Cir. 2007) does not show the "particularized need" that is required to outweigh the policy of grand jury secrecy. United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986); United States v. Murray, 751 F.2d 1528, 1533 (9th Cir. 1985). Because neither argument supports a basis for disclosure, Defendant's motion should be denied.

Defendant seeks release of the transcripts on the grounds that he wants to make sure the Government did not misinstruct the grand jury and he wants to make sure that the evidence presented at trial matches the evidence submitted to the grand jury. Defendant's arguments are without merit. The U.S. Supreme Court has held that the Fifth Amendment right not to be tried for a crime not presented to a grand jury is triggered by "only a defect so fundamental that it causes the grand jury no longer to be a grand jury, or the indictment no longer to be an indictment." Midland Asphalt Corp. v. United States, 489 U.S. 794, 802 (1989). If a grand jury should ever return a true bill when there is insufficient evidence, the greatest safeguard is the petit jury and the rules governing its determination of guilty. See Sears, Roebuck & Co., 719 F.2d at 1392.

Defendant's first ground for release of the grand jury transcripts, i.e. the possibility that the grand jury was misinstructed, is foreclosed by Ninth Circuit precedent. In United States v. Kenny, 645 F.2d

1323 (9th Cir. 1981), <u>cert. denied</u>, 452 U.S. 920 (1981), the Court rejected the defendant's request to dismiss the indictment on the basis of his allegation that the grand jury returned a true bill without any instruction on the applicable law. The Court stated that it was "not persuaded that the Constitution imposes the additional requirement that grand jurors receive legal instructions" and warned that "the giving of such instructions portends protracted review of their adequacy and correctness." <u>Id.</u> at 1347. In this case, Defendant seeks to accomplish precisely what <u>Kenny</u> feared. Namely, he wishes for this Court to review the adequacy and correctness of the instructions, if any, given to the grand jury in this case. The Court cannot do so. This is particularly true considering that even if there was evidence—rather than merely Defendant's speculation—that the grand jury was misinstructed on an element of the offense, this would not be sufficient grounds to compel the disclosure of the grand jury transcripts. <u>See United States v. Wright</u>, 667 F.2d 793, 796 (9th Cir. 1982) (holding that erroneous grand jury instructions do not automatically invalidate an otherwise proper indictment); <u>United States v. Larrazolo</u>, 869 F.2d 1354, 1359 (9th Cir.1989), <u>overruled on other grounds by</u> <u>Midland Asphalt</u>, 489 U.S. at 799-800 (concluding that even if the grand jury instructions were erroneous, the defendant failed to show that he was prejudiced).

   Defendant's second argument fares no better because he ignores the fact that the grand jury may indict someone based on inadmissible evidence or evidence obtained in violation of the rights of the accused.[2] Tracing the history of the grand jury from English common law, the U.S. Supreme Court has observed that grand jurors were not hampered by technical or evidentiary laws, and traditionally could return indictments based not on evidence presented to them at all, but on their own knowledge of the facts. <u>See</u> <u>Costello v. United States</u>, 350 U.S. 359, 363 (1956). In light of this tradition, the Court held that "neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act," and that grand jury indictments could not be challenged based on the insufficiency or incompetence of the evidence. <u>Id.</u> Rather, "[a]n indictment returned by a legally

---

   [2] <u>See, e.g.</u>, <u>United States v. Mandujano</u>, 425 U.S. 564 (1976) (indictment brought based on evidence obtained in violation of defendant's right against self-incrimination); <u>United States v. Calandra</u>, 414 U.S. 338, 343 (1974); <u>United States v. Blue</u>, 384 U.S. 251 (1966) (indictment brought based on evidence obtained in violation of defendant's right against self-incrimination); <u>Lawn v. United States</u>, 355 U.S. 339 (1958); <u>see also</u> <u>Reyes v. United States</u>, 417 F.2d 916, 919 (9th Cir. 1969); <u>Johnson v. United States</u>, 404 F.2d 1069 (9th Cir. 1968); <u>Wood v. United States</u>, 405 F.2d 423 (9th Cir. 1968); <u>Huerta v. United States</u>, 322 F.2d 1 (9th Cir. 1963).

constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits." Id. at 409. Accordingly, Defendant's argument that the evidence at trial may differ from the evidence presented to the grand jury is without merit and certainly does not justify releasing the grand jury transcripts in this case.

Defendant does not and cannot credibly allege that the Government attempted to mislead the grand jury. Furthermore, there is no basis to suppose that the grand jury was impaired in its ability to independently evaluate the evidence. If Defendant can identify something specific that was done incorrectly with the grand jury, the Government requests that such a motion be done in writing so that the Government can respond. Without more, the motion should be denied.

## C.    THE MOTION FOR A BILL OF PARTICULARS SHOULD BE DENIED

Defendant next contends that if the motion to release grand jury transcripts is denied, then the Government should provide a bill of particulars. This motion should also be denied because the indictment and discovery previously produced is sufficient to put Defendant on notice as to the charges and enable him to present a defense if he so chooses.

The purpose of a bill of particulars is: (1) to minimize the danger of surprise at trial; (2) to provide sufficient information on the nature of the charges to allow preparation of a defense; and (3) to protect against double jeopardy. United States v. Robertson, 15 F.3d 862, 874 (9th Cir. 1994), rev'd other grnds,514 U. S. 669, 115 S. Ct. 1732 (1995), reinstated in part, 73 F.3d 249 (9th Cir. 1996); United States v. Burt, 765 F.2d 1364, 1367 (9th Cir. 1985). Generally, an indictment is sufficient if it sets forth the elements of the charged offense as to ensure the right of the defendant not to be placed in double jeopardy and to be informed of the offense charged. United States v. Woodruff, 50 F.3d 673, 676 (9th Cir. 1995). There is also no need of a bill of particulars because the indictment adequately advised defendant of the charges. This can be done in a variety of ways and is most generally accomplished in the indictment itself. United States v. Robertson, supra (bill of particulars appropriately denied where the indictment contained the names of alleged coconspirators, the approximate dates on which the alleged illegal conduct occurred, and the overt acts that comprised the illegal activity). Accord United States v. DeCesare, 765 F.2d 890, 897-98 (9th Cir.), amended on other grounds, 777 F.3d 543 (1985).

Defendant claims that he "has no idea how the government will attempt to prove the elements of Counts One, Three and Five" [Def's Motion at 11], which form the basis for the bringing in for financial

gain counts.  This claim is without merit because the discovery already produced provides more than sufficient information as to his involvement.  See United States v. Long, 706 F.2d 1044, 1054 (9th Cir. 1983) ("Full discovery will obviate the need for a Bill of Particulars."); United States v. Clay, 476 F.2d 1211, 1215 (9th Cir. 1973) (full discovery will obviate the need for a bill of particulars); United States v. Mitchell, 744 F.2d 701, 705 (9th Cir. 1984) (no allegation that full discovery was not afforded pursuant to Rule 16).  Defendant's post-Miranda statements alone are sufficient to establish the counts related to bringing in for financial gain and aiding and abetting.  Specifically, Defendant admitted that he (1) crossed into the United States with the group of illegal aliens and (2) he agreed in Mexico to transport the group of aliens to Los Angeles.  Defendant was provided with a summary of his statements in both the probable cause statement and the report of investigation.  A video tape of the statement itself was also produced in discovery.  Accordingly, Defendant's motion should be denied.

## D.    DEFENDANT'S STATEMENTS ARE ADMISSIBLE

Defendant contends, without citation to any *facts*, that all of his statements should be suppressed due to Miranda violations.  Defendant statements should be admitted into evidence, without a hearing, as there is nothing in the record to indicate any violation of Defendant's rights.

### 1.    Post-Miranda Statements

After his arrest, Defendant was advised of his Miranda rights.  The advisal of rights, Defendant's waiver of his rights and his statements were all memorialized on videotape.  The requirements of Miranda were satisfied and all of Defendant's statements are admissible against him.

### a.    Standards Governing Admissibility of Statements

A statement made in response to custodial interrogation is admissible under Miranda v. Arizona, 384 U.S. 437 (1966) and 18 U.S.C. § 3501 if a preponderance of the evidence indicates that the statement was made after an advisement of rights, and was not elicited by improper coercion. See Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and Miranda determinations; valid waiver of Miranda rights should be found in the "absence of police overreaching").  Although the totality of circumstances, including characteristics of the defendant and details of the interview, should be considered, improper coercive activity must occur for suppression of any statement.  See id. (noting that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'"); cf. Schneckloth v. Bustamonte, 412 U.S. 218, 226

1  (1973) ("Some of the factors taken into account have included the youth of the accused; his lack of

2  education, or his low intelligence; the lack of any advice to the accused of his constitutional rights; the

3  length of detention; the repeated and prolonged nature of the questioning; and the use of physical

4  punishment such as the deprivation of food or sleep.") (citations omitted).  While it is possible for a

5  defendant to be in such a poor mental or physical condition that they cannot rationally waive their rights

6  (and  misconduct can be inferred based on police knowledge of such condition, Connelly, 479 U.S. at

7  167-68), the condition must be so severe that the defendant was rendered utterly incapable of rational

8  choice.  See United States v. Kelley, 953 F.2d 562, 564 (9th Cir.1992) (collecting cases rejecting claims

9  of physical/mental impairment as insufficient to prevent exercise of rational choice).

**b.  Standards Governing Grant or Denial of Evidentiary Hearing**

11       Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal

12  Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when

13  the defendant adduces *specific* facts sufficient to require the granting of the defendant's motion.

14  See United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (where "defendant, in his motion to

15  suppress, failed to dispute any material fact in the government's proffer, . . . the district court was not

16  required to hold an evidentiary hearing"); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274

17  (S.D. Cal. 1991) (boilerplate motion containing indefinite and unsworn allegations was insufficient to

18  require evidentiary hearing on defendant's motion to suppress statements); Crim. L.R. 47.1.  The local

19  rule further provides that "the Court need not grant an evidentiary hearing where either party fails to

20  properly support its motion or opposition."

21       No rights are infringed by the requirement of such a declaration.  Requiring a declaration from a

22  defendant in no way compromises defendant's constitutional rights, as declarations in support of a

23  motion to suppress cannot be used by the United States at trial over a defendant's objection.  See Batiste,

24  868 F.2d at 1092 (proper to require declaration in support of Fourth Amendment motion to suppress );

25  Moran-Garcia, 783 F. Supp. at 1271-74 (extending Batiste to Fifth Amendment motion to suppress).

26  Moreover, Defendant has as much information as the Government in regards to the statements he made.

27  See Batiste, 868 F.2d at 1092.  At least in the context of motions to suppress statements, which require

28  police misconduct while the Defendant is in custody, Defendant certainly should be able to provide the

facts supporting the claim of misconduct.  Finally, Defendant's contention that 18 U.S.C. § 3501 requires

1   an evidentiary hearing in every case lacks merit.  Section 3501 requires only that the Court make a

2   pretrial determination of voluntariness "out of the presence of the jury."  Nothing in section 3501 betrays

3   any intent by Congress to alter the longstanding rule vesting the form of proof on matters for the court

4   in the discretion of the court.  Batiste, 868 F.2d at 1092 ("Whether an evidentiary hearing is appropriate

5   rests in the reasoned discretion of the district court.") (citation and quotation marks omitted).

6                       **c.    Adequate Proof to Support Rejection of a Motion to Suppress**

7          The Ninth Circuit has expressly stated that a United States proffer based on the statement of facts

8   attached to the complaint is alone adequate to defeat a motion to suppress where the defense fails to

9   adduce specific and material facts.  See Batiste, 868 F.2d at 1092.  Moreover, the Ninth Circuit has held

10  that a District Court may properly deny a request for an evidentiary hearing on a motion to suppress

11  evidence because the defendant did not properly submit a declaration pursuant to a local rule.  See

12  United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991); United States v. Howell, 231 F.3d 616,

13  620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be held only when the

14  moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court

15  to conclude that contested issues of fact exist."); see also United States v. Walczak, 783 F. 2d 852, 857

16  (9th Cir. 1986) (holding that evidentiary hearings on a motion to suppress are required if the moving

17  papers are sufficiently definite, specific, detailed, and nonconjectural to whether contested issues of fact

18  exist).  Even if Defendant were to provide belated factual allegations, the Court may still deny an

19  evidentiary hearing if the grounds for suppression consist solely of conclusory allegations of illegality.

20  See United States v. Wilson, 7 F.3d 828, 834-35 (9th Cir. 1993) (District Court Judge Gordon Thompson

21  did not abuse his discretion in denying a request for an evidentiary hearing where the appellant's

22  declaration and points and authorities submitted in support of motion to suppress indicated no contested

23  issues of fact).

24         As Defendant in this case has failed to provide a declaration alleging specific and material facts,

25  the Court would be well within its discretion to deny Defendant's motion based solely on the statement

26  of facts attached to the complaint in this case, without any further showing by the United States.

27  Moreover, Defendant had an opportunity, in his moving papers, to proffer any facts alleging violations

28  of his rights, but failed to do so.  This failure is particularly notable given that the statement in question

was videotaped and the tape was provided to Defendant.  Instead, Defendant merely cites generic

                                            16                        08CR1019-BTM

Miranda law.  Defendant's allegation of a Miranda violation is mere boilerplate language that fails to demonstrate there is a disputed factual issue requiring an evidentiary hearing.  See Howell, 231 F.3d at 623.

As such, this Court should deny Defendant's motion to suppress and hold, based on the Statement of Facts attached to the Complaint [Govt's Exh. A], that Defendant's statements were knowingly, voluntarily and intelligently made.

**2.    Defendant's Statements Were Voluntary**

A confession is voluntary if it is the "product of a rational intellect and a free will."  Medeiros v. Shimoda, 889 F.2d 819, 823 (9th Cir.1989) (quoting Townsend v. Sain, 372 U.S. 293, 307 (1963)).  A confession is involuntary when "under the totality of circumstances, the government obtained the confession by coercion or improper inducement."  United States v. Turner, 926 F.2d 883, 888 (9th Cir.) (quoting United States v. Pinion, 800 F.2d 976, 980 (9th Cir.1986)).  The crucial question is whether Defendant's will was overborne when he elected to make statements.  See United States v. Miller, 984 F.2d 1028, 1031 (9th Cir. 1988).

In the present case, there is no evidence to suggest that Defendant's statements were the result of any coercion or improper inducement.  Accordingly, the statements as well as the fruits of the lawful arrest are admissible.  Should the Court decide to conduct a voluntariness hearing, the Government requests that such a hearing be done at the time of trial outside the presence of the jury.

**E.    BORDER PATROL AGENTS LAWFULLY STOPPED DEFENDANT'S VEHICLE**

Defendant contends that the investigatory stop that preceded the discovery of six illegal aliens in the vehicle he was driving was unconstitutional.  According to Defendant, the "only basis" for the stop was the location, that the car was speeding, that the windows were tinted, that the car appeared heavily loaded, that the windows were foggy and that the driver appeared nervous. [Def's Motion at 14.] Defendant is not only wrong, his brief also fails to mention key facts that establish the validity of the stop, most notably that (1) Defendant failed to yield to a fully marked Border Patrol vehicle with activated lights and sirens and (2) after driving erratically and engaging in counter-surveillance techniques, Defendant attempted to flee his vehicle on foot, but managed to get stuck between the vehicle and the highway center divider.  Considering that Defendant did not file a declaration and he failed to mention his extreme failure to yield, he presumably does not dispute that his evasive actions

created adequate reasonable suspicion to justify the stop.  His silence is understandable given that evasive conduct is extremely relevant to the reasonable suspicion analysis.

Defendant's motion to suppress evidence based on an allegedly illegal stop suffers the same failure as his motion to suppress his statements: Defendant has failed to establish a disputed issue of fact that would require an evidentiary hearing. The facts supporting the validity of the stop are set forth in detail in the sworn Probable Cause Statement that was attached to the complaint in this matter. [Gov't's Exh. A.]  As discussed above, because Defendant has failed to file a declaration or even proffer facts sufficient to dispute the Government's the probable cause statement, Defendant's motion should be denied without an evidentiary hearing. [See Section III(D)(1)(b)-(c), supra.]

## 1. **The Applicable Law**

The Fourth Amendment prohibits unreasonable searches and seizures by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. United States v. Arvizu, 534 U.S. 266, 273 (2002).  Because the balance between the public interest and the individual's right to personal security tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot.  Id. at 273.  Although an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard. Id. at 274.

An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.  Id. at 273.  When a court seeks to make a determination whether reasonable suspicion exists, the finder of fact must look at the "totality of the circumstances" of a given case to see whether the detaining officer had a "particularized and objective basis" for suspecting legal wrongdoing.  Id.  This process allows the officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude the untrained person." Id.; United States v. Diaz-Juarez, 299 F.3d 1138, 1141 (9th Cir. 2002).  Moreover, individual factors that may appear innocent in isolation may constitute suspicious behavior when aggravated together. Diaz-Juarez, 299 F.3d at 1141, citing United States v. Sokolow, 490 U.S. 1, 9-10 (1989).

Reasonable suspicion "need not rule out the possibility of innocent conduct." <u>Arvizu</u>, 534 U.S. at 277.  The Supreme Court explicitly recognizes that the Fourth Amendment allows the risk that an innocent person will be stopped under both the reasonable suspicion and probable cause standards:

> In allowing such detentions, <u>Terry</u> accepts the risk that officers may stop innocent people. Indeed, the Fourth Amendment accepts that risk in connection with more drastic police action; persons arrested and detained on probable cause to believe they have committed a crime may turn out to be innocent.

<u>Illinois v. Wardlow</u>, 528 U.S. 119, 126 (2000).

"The principal components of a determination of reasonable suspicion . . . will be the events which occurred leading up to the stop . . . and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion . . . ." <u>United States v. Ornelas</u>, 517 U.S. 690, 696 (1996).  The evidence "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." <u>United States v. Cortez</u>, 449 U.S. 411, 418 (1981).

### 2.    **The Merits of the Stop**

The following facts, which are set forth in the probable cause statement [Govt's Exh. A], all support the validity of the stop:

- The agents involved in the vehicle stop are part of a specialized Smuggling Interdiction Unit (SIG).  On February 22, 2008, the SIG unit was working a section of I-15 known for alien and drug smuggling.

- Agent Mondragon observed that the vehicle appeared heavily loaded (the rear cargo area was riding low and bouncing), it had heavily tinted windows and it was speeding.  In addition, Agents Mondragon and Martinez noticed that the windows were foggy, but only two passengers were visible.  In the agents' experience, foggy windows are common when a vehicle is transporting multiple occupants with damp clothes (it was raining).

- A records check revealed that the vehicle was registered to an address on Logan Avenue. The SIG agents are familiar with this area of San Diego and the fact that it is commonly known for harboring illegal aliens (stash houses).

- Agent Mondragon continued following the vehicle and noticed that it appeared to be trying to avoid his marked sedan by speeding up when Agent Mondragon slowed down and vice versa.  In addition, Agent Mondragon observed that the front seat passenger appeared nervous, was staring straight ahead, was firmly erect and was not conversing with the driver.
- Agent Mondragon believed that the vehicle was being used to smuggle aliens so he activated his lights and sirens to conduct a vehicle stop.  **The driver accelerated and failed to yield**.  Agent Mondragon was forced to terminate pursuit.

- Agent Martinez observed that the driver was behaving erratically, cutting off traffic and driving in a manner consistent with counter-surveillance techniques, such as taking exits at the last minute and exiting the highway and then re-entering.

- Agent Velez was directly in front of the vehicle when it got stuck in traffic. Agent Velez activated his rear emergency lights and **the driver of the vehicle attempted to jump out of his still running vehicle.** The vehicle then rolled forward and trapped the driver between the car door and the center divide of the highway.

In United States v. Brignoni-Ponce, 422 U.S. 873 (1975), the Supreme Court listed a number of non-exclusive factors, the totality of which gave rise to reasonable suspicion. Most of those factors are identical to the ones present in the case at bar: (1) characteristics of the area; (2) proximity to the border; (3) usual patterns of traffic and time of day; (4) previous alien or drug smuggling in the area; (5) behavior of the driver including obvious attempts to evade officers; (6) model and appearance of the vehicle; and (7) officer experience. Id. at 884-85; United States v. Sigmond-Ballesteros, 309 F.3d 545, 547 (9th Cir. 2002); United States v. Tiong, 224 F.3d 1136, 1139 (9th Cir. 2000).

The facts of the instant case clearly satisfy Brignoni-Ponce. As discussed above, the agents had significant experience with smuggling in the area where they first observed Defendant's vehicle. The appearance of the vehicle was consistent with smuggling given that it appeared weighted down in back and had foggy windows, but only two visible passengers. In addition, the driver and the visible passenger reacted to the marked vehicle in ways that were consistent with nervousness. Finally, records checks supported the agents' suspicion that the vehicle was being used to smuggle aliens in that the vehicle was registered to an area known for alien stash houses.

These facts, combined with the agents' specialized experience in this area, establishes reasonable suspicion to believe that the vehicle was being used to transport aliens. As the Court explained in Tiong, even if Defendant could come up with "a possible innocent explanation for every police observation," that would not undermine reasonable suspicion. 224 F.3d at 1140; see also United States v. Crapser, 472 F.3d 1141, 1147-48 (9th Cir. 2007); Diaz Juarez, 299 F.3d at 1142-43.

In this case, however, the analysis most certainly does not stop there. Defendant's flight constituted "the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." Wardlow, 528 U.S. at 124. Because Defendant had not yet been "seized" at the time he fled, his "evasive behavior is a pertinent factor in determining reasonable suspicion." Id.; see also United States v. Smith, 217 F.3d 746 (9th Cir. 2000) (a suspect is not seized for purposes of the Fourth Amendment until "the suspect is physically subdued or submits to the assertion of authority;"

1  "evasive actions contribute to the totality of circumstances suggesting reasonable suspicion"); United

2  States v. Santamaria-Hernandez, 968 F.2d 980, 984 (9th Cir. 1992).

3         Defendant failed to yield to Agent Mondragon's marked vehicle when he activated his lights and

4  sirens.  Then Defendant began driving erratically, cutting off traffic and engaging in counter-surveillance

5  tactics.  Finally, when Agent Velez activated his emergency lights, Defendant tried to flee on foot even

6  though his vehicle was still running and he was in the middle of the roadway.  At this point, Defendant

7  was seized by his own vehicle, which had him pinned against the center divide.  Due to Defendant's own

8  conduct, the agents had to approach the vehicle to rescue Defendant.  Defendant can hardly argue that

9  given this sequence of events the agents did not have reasonable suspicion to approach the vehicle and

10  its occupants for an investigatory stop.

11         Under the totality of the circumstances, the stop was supported by reasonable suspicion, if not full-

12  blown probable cause.  Defendant's motion to suppress evidence should be denied without a hearing

13  unless and until he can come forward with a declaration or proffer establishing a pertinent disputed issue

14  of fact.

15  **F.     THE GRAND JURY INSTRUCTIONS DO NOT REQUIRE DISMISSAL**

16         Defendant also moves to dismiss the indictment based on the instructions give to the Grand Jury.

17  Defendant briefing is identical in all relevant aspects to the briefing submitted in United States v.

18  Martinez-Covarrubias, Case No. 07CR0491-BTM and United States v. Jimenez-Bermudez, 07CR1372-

19  JAH.  Accordingly, the Government explicitly incorporates by reference the briefing on this issue that

20  was filed in Martinez-Covarrubias and Jimenez-Bermudez.  This motion has been denied by each court

21  that has considered it, and should also be denied in this case.  If the Court would like further briefing on

22  this issue, the Government would request leave to file a supplemental brief.

23  **G.     LEAVE TO FILE FURTHER MOTIONS**

24         The Government does not oppose this motion so long as any further motions filed are based upon

25  newly produced discovery or information not available now.

26  //

27  //

28  //

1

## IV

2

## CONCLUSION

3        For the foregoing reasons, the Government respectfully requests that Defendant's motions, except

4    where not opposed, be denied.

5        DATED:   May 16, 2008.

6                                        Respectfully Submitted,

7                                        KAREN P. HEWITT
                                         United States Attorney
8

9                                        /s/ *Nicole Acton Jones*
                                         NICOLE ACTON JONES
10                                       Assistant U.S. Attorney

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR1019-BTM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| | ) | |
| CESAR PONCE-SALAZAR | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

IT IS HEREBY CERTIFIED THAT:

I, NICOLE ACTON JONES, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action.  I have caused service of **GOVERNMENT'S RESPONSE AND OPPOSITION** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

    1.  John Ellis, Federal Defenders
    2.  Thomas Gilmore

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 16, 2008.

                   /s/ *Nicole Acton Jones*
                   NICOLE ACTON JONES
                   Assistant U.S. Attorney